KAEDIAN LLP
KATHERINE C. MCBROOM (SBN 223559)
kmcbroom@kaedianllp.com
280 S. Beverly Dr. Ste. 209
Beverly Hills, CA 90212
Telephone: (310) 893-3372
Facsimile: (310) 935-0323

Attorneys for Defendant
BERENICE SEGURA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; | Case No.:  2:22-cr-00530-2-DOC |
| Plaintiff, | *Before the Honorable David O. Carter* |
| v. | **DEFENDANT BERENICE SEGURA'S SENTENCING MEMORANDUM** |
| LUIS ALONSO, *et al.* (BERENICE SEGURA – D2), | Date:    June 3, 2024 |
| Defendant. | Time:    1:30 p.m. |
| | Court:   10A |

To The Honorable David O. Carter, United States District Judge; The United States Attorney's Office and Its Attorneys of Record; Assistant United States Attorney Declan Conroy; United States Probation Officer Hannah Roberts; and/or her representatives:

Defendant Berenice Segura, by and through counsel, hereby files her Sentencing Memorandum.

Dated:  May 27, 2024

KAEDIAN LLP

*Katherine McBroom*

KATHERINE C. MCBROOM
Attorney for Defendant
BERENICE SEGURA

# **MEMORANDUM**

## **I. INTRODCUTION**

Defendant Berenice Segura ("Ms. Segura") pleaded guilty to conspiring to engage in illegal gun sales. While Ms. Segura did not engage in any transactions or facilitate any sales with undercover agents, she accompanied her boyfriend, Co-Defendant Jose Alonso, on 4 of 9 transactions, and, on one occasion, communicated via text with Defendant Alonso concerning a transaction. Though her participation in the conspiracy is relatively minor, Ms. Segura's takes responsibility for her actions, understands that she must be punished, and submits this memorandum to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment as required pursuant to 18 U.S.C. Section 3553(a).

Ms. Segura respectfully requests that the Court impose the following sentence and make the following recommendations:

1. No more than 12 months imprisonment;

2. Imposition of no fine;

3. Imposition of the mandatory $100 special assessment pursuant to 18 U.S.C. § 3013;

4. Recommendation that the Bureau of Prisons ("BOP") evaluate the defendant for participate in the BOP's Residential Drug Abuse Program ("RDAP");

5. Recommendation that the BOP permit Ms. Segura to participate in the First Step Act Programs the BOP has available;

6. The conditions of supervised release articulated in the United States Probation Office's ("USPO's") Presentence Report ("PSR"); and

7. That Ms. Segura be housed in a BOP facility that offers the RDAP program and that the location be in Southern California due to family ties.

A downward departure and variance from the sentence recommended under the USSG Sentencing Guidelines is warranted in this matter given (1) Ms. Segura's minor

role in the alleged scheme; (2) sentencing manipulation which resulted in an increased number of firearms and thus an inflated guideline range; (3) Ms. Segura's early acceptance of responsibility; (4) Ms. Segura's social emotional history; and (5) Ms. Segura's strong ties to her family and the community.

## II. OBJECTIONS TO THE PRESENTENCE REPORT

The Presentence Report states a total offense level of 17, including a 2 point reduction for minor role, and a criminal history category I. While Ms. Segura agrees that the base offense level and criminal history category calculated by the USPO are consistent with the Guidelines Manual, a downward variance is warranted based on sentencing manipulation due to multiple government initiated firearm sales which served only to increase the number of firearms involved, thus inflating the recommended guideline range.

## III.  STATEMENT OF FACTS

### A.  Factual Basis

The factual basis of Ms. Segura's plea is set forth in the Plea Agreement which is incorporated by reference. [ECF 83.]  Ms. Segura requests that that Court also consider additional factual information included in the Presentence Investigation Report ("PSR") [ECF 181], derived from USPO Hannah Roberts' interview of Ms. Segura and information gathered during interviews by the defense team which is included herein.

### B. Ms. Segura's Background

#### 1.  Ms. Segura's Childhood and Adolescence

Ms. Segura, now 23 years old, was born on December 11, 2000 in Pacoima, California to Mario Segura and Rosa Adame.  She was raised in the projects of San Ferando Valley with her three siblings, Cristian, age 33, Lizbeth, age 30, and Angie, age 21.  Ms. Segura's mother, Rosa, financially supported the family. She worked two jobs, cleaning houses and offices, and was rarely home.  Ms. Segura's father Mario, on the other hand, remained unemployed for most of her childhood.  He suffered from

alcohol addiction which posed significant challenges for the entire family.

As a child, Ms. Segura was exposed to criminality and gang violence. Her neighborhood was in gang territory which resulted in her exposure to drug use, drug sales, and violence from a very early age. Her brother, Cristian, with whom Ms. Segura was very close, fell victim to this. He became heavily involved in gang life as a teenager. When Ms. Segura was only nine years old, Cristian, then age 19, was convicted of murder. He is currently serving a life sentence with a parole eligibility date in 2050. Ms. Segura speaks regularly with her brother and visits him with her mother when time permits.

At age 12, Ms. Segura's parents separated due to her father's infidelity. Thereafter, Ms. Segura rarely saw her father. He would disappear for months at time. In her adulthood, Ms. Segura has managed to reconcile with her father, but recognizes what a tremendously negative impact her father's absence and failure to provide stability to her family has had on her and her siblings.

A year after her parent's separation, Ms. Segura suffered another tragic loss. When she was 13 years old, her neighbor and friend, Donna, who was age 19, died in a car accident. Donna was eight months pregnant at the time. Over the years, Ms. Segura has remained close to Donna's younger sister, Hennessey.

As a teen, Ms. Segura attended several different high schools. Unfortunately, she was expelled multiple times for cutting class and fighting at school. At age 16, Ms. Segura became pregnant by Sylvester Armenta, who was age 19. She gave birth to her first son, Nathan, who is now five. While pregnant, Ms. Segura attended and eventually graduated from McAlister Hight School. Ms. Segura ended her relationship with Mr. Armenta after two years. Currently, Ms. Segura has primary custody of Nathan.

At age 16, when Ms. Segura became pregnant with her son, Ms. Segura's mother kicked her out of the family home. Her mother was fed up with Ms. Segura's behavior and the company she kept. Until about age 21, Ms. Segura lived with various

friends in the Los Angeles area and would return to her mother's home in Palmdale from time to time.

### 2. Exposure to Gang Violence

Ms. Segura was exposed to gang violence from a very early age. She frequently witnessed fighting and heard gunshots in her neighborhood. When she was eight, Ms. Segura recalls her mother's parked vehicle being shot up. At nine, her brother Cristian was arrested for a gang-related murder and is currently serving time at a California Department of Corrections and Rehabilitation facility. Prior to his arrest, Ms. Segura recalls several gang members hanging around her home and socializing with her brother. With the absence of her mother and father in the home, Ms. Segura looked up to and depended on these young men for care and support.

When she was 13, after her parents' separation, Ms. Segura moved with her mother and sisters to Palmdale. Ms. Segura's mother hoped to distance Ms. Segura from gang life in Pacoima. At the time, Ms. Segura had begun associating with local gang members and acting out. Despite her mother's efforts, Ms. Segura continued to associate with gang members and engage in reckless behavior. At age 14, Ms. Segura's close friend, Willy, was murdered in a gang shooting after having been jumped into a gang the week before.

As stated above, when Ms. Segura was 16, her mother kicked her out of the house, in large part due to her association with gang members. For the next 4 to 5 years, Ms. Segura lived with various friends in the Los Angeles area. While Ms. Segura continued to associate with gang members, she still managed to maintain employment and care for her child.

### 3. Alcohol and Drug Use

Ms. Segura began experimenting with drugs and alcohol at the age of 12. By age 13, she was drinking and smoking marijuana daily and regularly ditching school. Since April 2023, Ms. Segura has been regularly attending Narcotics and Alcoholics Anonymous through her employer, Homeboy Industries. During pretrial supervision

1  in this matter, Ms. Segura has tested negative for every drug test administered.

2            **4.  Education and Employment**

3        After graduating from McAlister High School in June 2020, Ms. Segura

4  enrolled in the Medical Assistant Program at the National Career College in Los

5  Angeles. Unfortunately, she was unable to complete the course due to her

6  responsibilities as a single mother. Her son Nathan was only three years old at time.

7        Ms. Segura has maintained consistent employment over the years despite the

8  challenges of being a single mother.  She has worked at Goodwill, Jack in the Box,

9  and currently works at Homeboy Industries where she has been employed since

10  September 2021.

11            **5.  Ms. Segura's Children**

12        Ms. Segura met Jose Luis Alonso, her current boyfriend and co-defendant in the

13  instant case while working for Homeboy Industries. After three months of dating, she

14  became pregnant with her second child, King Alonso, age 1. Ms. Segura gave birth to

15  King on November 1, 2022, six days after Defendant Jose Alonso's arrest. On January

16  22, 2024, this Court sentenced Mr. Alonso to 188 months in BOP custody to be

17  followed by five years of supervised release. King will be a teenager by the time Mr.

18  Alonso is released from BOP custody. That leaves Ms. Segura to raise their son on her

19  own.

20        Currently, Ms. Segura resides with Mr. Alonso's mother, along with her two

21  sons, ages 5 and 1.  She continues to work full time at Homeboy Industries and relies

22  on family members to care for her sons while she works. She contributes financially to

23  the household by covering groceries and a portion of the rent. Ms. Segura understands

24  that she faces time in BOP custody as a result of her misconduct.  In anticipation of a

25  custodial sentence, Ms. Segura has made arrangements to ensure the care and safety of

26  her two small children: she has turned over guardianship of her two sons to her mother

27  so that they can remain with family members with whom they are familiar during her

28  time away.

6.  <u>Ms. Segura's Conduct During Pretrial Release</u>

Ms. Segura was arrested on or about January 6, 2023.  The Court released her on a $15,000 appearance bond on the same date and she has been on pretrial supervision since. Ms. Segura has complied with all terms of supervision. Additionally, she has maintained full time employment with Homebody Industries, where she has worked since September 2021, cares for her two small children, and contributes financially to her household.

7.  <u>Ms. Segura's Community and Familial Support</u>

Over the last couple of years, Ms. Segura has formed a close relationship with her mother, her sisters, and Mr. Alonso's mother.  They have provided encouragement, support, and solace to Ms. Segura over the last several months and have vowed to continue to do so through her incarceration and upon release from BOP custody.

Ms. Segura's mother, Rosa Adame, writes, "although I recognize the seriousness of her mistake, I am committed to supporting her unconditionally on her path to rehabilitation and reintegration into the community." (Exhibit A, Character Letters.)  Ms. Adame has been a tremendous support to Ms. Segura.  Currently, she assists Ms. Segura with childcare and has taken over guardianship of Ms. Segura's children so that she may live with and care for them in their mother's absence.

Ms. Segura's sister, Lizbeth Osuna, writes, "Our bond is bigger than her bad choices, and I love her unconditionally. Despite the gravity of her offense, I remain committed to being her support system." (Exhibit A.) Ms. Osuna goes on to describe Ms. Segura as a devoted mother and hard worker who has used her time during pretrial release to better herself and her chances of success. She concludes her letter by stating, "Berenice is more than her past actions. She is a work in progress. I trust that the justice system will weigh her remorse, rehabilitation efforts, and the love of our family as it determines her sentence." (*Id.*)

Cristian Adame, Ms. Segura's older brother who is serving a life sentence, describes the positive changes Ms. Segura has exhibited over the past 18 months. He states, "Since the crime, I have observed my sister's transformation.  She has actively sought rehabilitation by making changes in her life, for one disassociating herself from old acquaintance[s]. Furthermore, she has c[o]me to me for advice on how to rehabilitate and maintain a healthy crime free lifestyle." (Exhibit A.) He continues, "In my 14 years in prison I have not [been] able to be there physically for my sister so I partially blame her bad choices on myself for exposing her to the criminal/gang lifestyle that I use to live." (*Id.*)  Mr. Adame commends Ms. Segura on her efforts to improve and reiterates that he and his family are devoted to supporting her in every way possible. (*Id.*)

Ms. Segura's employer also provided letters of support for this Court's review. Ms. Segura's case manager at Homeboy Industries, Leah Pinedo, expresses that she is impressed by Ms. Segura's commitment to self-help and rehabilitation.  She writes:

> I have worked with Berenice Segura for three years now and she amazes me every day with her positive attitude and willingness to change. Given Berenice's environment, household, and limitation to resources as she grew up it reveals why she has a survival mentality. Growing up Ms. Segura learned how to survive and not live. The unhealthy habits Berenice learned growing up is a challenge that she is learning how to dismantle. Not only has Berenice come to Homeboy Industries for rehabilitation services, but she has built relationships with mentors who guide her on this positive and healthy journey. Berenice has the support and foundation needed to become a contributing member of society and a positive mother to her children.

(Exhibit A.)

Finally, Homeboy Industries' founder and executive director, Fr. Gregory Boyle, describes how Homeboy Industries will continue assisting Ms. Segura upon her release from BOP custody. He states that he is committed to providing Ms. Segura with mentoring, counseling, and employment services when she is released.  (Exhibit A.)

Ms. Segura is surrounded my family and community members who believe in her, love her, and who want her to succeed.  She is thankful that, despite her misconduct in this case, she can rely on her family and community to support her efforts to better herself during and after incarceration.

### 8. Ms. Segura's Plans for Reentry

Upon release from BOP custody, Ms. Segura plans to reside in Palmdale with her mother and her two children.  She intends to secure employment and eventually wants to return to school to complete the medical assistant program she began in 2021. Her goal is to provide a safe and loving home, free of violence and substance abuse, to her children.

## IV.  A TWO POINT REDUCTION IS WARRANTED DUE TO MS. SEGURA'S MINOR ROLE IN THE CONSPIRACY

USPO Roberts provides that a two point reduction for minor participant is warranted under U.S.S.G. § 3B1.2(b) because there is no evidence Ms. Segura had any decision-making authority, participated in the planning or organizing of the misconduct, or stood to significantly benefit from the criminal activity. As set forth in the Plea Agreement, Ms. Segura's relevant conduct consists of being present with her boyfriend for 4 of 9 transactions and exchanging a text message on one occasion regarding an agent's request for firearms. The defense agrees with USPO's Robert's analysis and requests a two point reduction for Ms. Segura's role as a minor participant.

## V.  THE COURT MAY GRANT A DOWNWARD VARIANCE DUE TO SENTENCING MANIPULATION

Ms. Segura pleaded guilty to conspiring to engage in the business of dealing firearms without a license. This case involves a total of nine firearm transactions, all initiated by the Government, between May 26, 2022 and October 26, 2022.   Ms. Segura is not alleged to have personally procured firearms for sale, facilitated gun sales, or to have engaged in the transactions. Rather, Ms. Segura is alleged to have

1    accompanied a co-conspirator (her boyfriend) to transaction locations on four

2    occasions and, on one occasion, to have communicated via text message with her

3    boyfriend concerning an undercover ATF agent's request to purchase firearms.

4            The first transaction, in May 2022, was initiated by a confidential informant

5    with an unnamed co-conspirator and resulted in the sale of three firearms and various

6    types of ammunition. The next eight transactions were initiated by the Government in

7    communication with Defendant Jose Alonso. The June 9, 2022 transaction resulted in

8    the sale of 4 firearms and ammunition; the June 15, 2022 transaction resulted in the

9    sale of 4 firearms; the July 7, 2022 transaction resulted in the sale of 3 firearms; the

10   July 21, 2022 transaction resulted in the sale 4 firearms and ammunition; the August

11   18, 2022 transaction resulted in the sale of 6 firearms, gun parts, and ammunition; the

12   September 2, 2022 transaction resulted in the sale of 4 firearms, three machine gun

13   conversion kits, gun parts and ammunition; the September 21, 2022 resulted in the

14   sale of 5 firearms, eleven machine gun conversion kits, and ammunition, and the

15   October 26, 2022 transaction resulted in the sale of 5 firearms and ammunition.

16   Defendant Jose Alonso was arrested on October 26, 2022.

17           Under Section 2K2.1(b)(1) of the Sentencing Guidelines the applicable

18   guideline range is increased incrementally based on the number of firearms involved.

19   Here, the Government likely will request a 6 level increase under section

20   2K2.1(b)(1)(C) because a total of 37 firearms were involved in the scheme. However,

21   the large number of firearms recovered, and thus the increased advisory sentence, is a

22   result of the Government's initiation and facilitation of gun transactions over an

23   extended period of time. Had the Government arrested Defendant Jose Alonso after

24   the first two transactions, the number of firearms would total 7, which corresponds to

25   a 2 level increase.  U.S.S.G. § 2K2.1 (b)(1)(A).  Had they arrested the Defendant

26   anywhere after the third transaction and before the eighth  transaction, the number of

27   firearms would have totaled between 8 and 24, which corresponds to a 4 level

28   increase.  U.S.S.G. §2K2.1(b)(1)(B). The eighth transaction pushed the total number

9

firearms over 25, which corresponds to a 6 level increase. U.S.S.G. § 2K2.1(b)(1)(C).

Although defendants continued to engage in transactions with the Government over time, the government's initiation and facilitation of multiple transactions after a certain point served only to increase the number of firearms involved and thus the recommended punishment. This is an example of sentencing entrapment and/or sentencing manipulation, for which the Court may apply a downward departure or variance.

### A. Downward Departure Based on Sentencing Entrapment and/or Manipulation

There is not a codified procedure in the U.S.S.G. specifically addressing sentencing entrapment/manipulation wherein the government delays arrest and engages in multiple sales for the purpose of increasing sentencing exposure.[1] However, Application Note 27(A) to U.S.S.G. § 2D1.1, addressing sentencing manipulation in reverse sting operations, demonstrates the Sentencing Commission's recognition that agents might use tactics during undercover investigations to increase the amount of drugs at issue in a particular case. Specifically, Note 27 addresses scenarios in which an agent sells illegal substances at a reduced rate in order to increase the drug amount well beyond what the target could or would otherwise purchase, thus increasing sentencing exposure. In these cases, a downward departure is recommended to address the discrepancy.

---

[1] The Sentencing Guidelines have codified two downward departures to address Government manipulation: 5K2.12 and 2D1.1. Section 5K2.12 permits a downward departure where "the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." Section 2D1.1 addresses manipulation surrounding reverse sting operations. Application Note 27(A) provides that, in a reverse sting, if the Court finds that the government agent set a reduced price for a controlled substance, thereby leading the defendant to purchase a significantly greater quantity that he/she otherwise could, a downward departure is warranted.

The Ninth Circuit recognizes both sentencing entrapment and sentencing manipulation as a basis for downward departure. In *U.S. v. Staufer*, 38 F.3d 1103 (9th Cir. 1994), the Court held that a defendant is entitled to a downward departure based on sentencing entrapment where the government manipulates the quantity of drugs involved via undercover, covert transactions.  *Id.* at 1107.[2] *Staufer* stated:

> Prior to the enactment of the Guidelines, the only discretion delegated to law enforcement agencies was over whom to investigate and prosecute, and courts could adequately prevent government abuse by ensuring that only defendants with a criminal predisposition were being targeted. By exercising their discretion in sentencing, moreover, courts were able to ensure that defendants' prison terms did not exceed their culpability. Now that our sentencing scheme has moved from a discretionary process to a determinate system based on the weight of the drugs involved in a transaction, the entrapment doctrine designed for the previous system no longer adequately protects against government abuse nor ensures that defendants will be sentenced on the basis of the extent of their culpability.

*Id.* at 1106-07.

> The significance of the Amendment [to 2D1.1] is that it shows that the Sentencing Commission is aware of the unfairness and arbitrariness of allowing drug enforcement agents to put unwarranted pressure on a defendant in order to increase his or her sentence without regard for his predisposition, his capacity to commit the crime on his own, and the extent of his culpability. Our conclusion that a finding of sentencing entrapment is warranted in the instant case is motivated by the same concerns, and, as such, is fully consistent both with the Amendment and with the sentencing factors prescribed by Congress.

*Id.* at 1107.

Years later, in *U.S. v. Boykin*, 785 F.3d 1358 (9th Cir. 2015), the Court addressed and distinguished between sentencing entrapment and sentencing

---

[2] *Staufer*, 38 F.3d 1103, did not differentiate between sentencing entrapment and sentencing manipulation, stating that both occurred where a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment. *Id.* at 1106.

manipulation. *Boykin* clarified that sentencing entrapment is where a defendant predisposed to committing a lesser offense, was entrapped to commit a greater offense with greater punishment. *Id.* at 1360, *citing U.S. v. Mejia*, 559 F.3d 1113, 1118 (9th Cir. 2009). Sentencing manipulation, on the other, occurs where the government increases a defendant's guideline sentence by conducting a lengthy investigation which increases the quantity for which the defendant is responsible. *Id.,* citing *U.S. v. Torres*, 563 F.3d 731, 734 (8th Cir. 2009). *Boykin* clarified that sentencing entrapment entails a subjective analysis of defendant's predisposition while sentencing manipulation primarily concerns an objective analysis of the government's conduct and motives. *Id.*

A sentencing entrapment defense requires the defendant to establish by a preponderance of the evidence that he/she was predisposed to commit only a lesser crime and that the government engaged in conduct causing him/her to commit a more serious crime. *Mejia*, 559 F.3d at 1118; *U.S. v. Huang*, 687 F.3d 1197, 1203 (9th Cir. 2012). If the Court determines sentencing entrapment occurred, the Court should reduce the guideline calculation by the amount flowing from the entrapment. *See U.S. v. Briggs*, 623 F.3d 724, 729 (9th Cir. 2010). Sentencing manipulation requires the defendant to establish the agents engaged in later transactions solely to enhance the potential sentence. *Boykin*, 785 F.3d at 1356. Where the Court finds sentencing manipulation, it should apply a downward departure to account for inflation of the guideline range. *Id.* at 1361.

Here, with regard to sentencing entrapment, there is no evidence of Ms. Segura's predisposition to commit a lesser or greater crime. She does not have a history of gun sales or even gun possession. Further, her conduct in this case is limited to accompanying her boyfriend to firearm sales on four occasions and communicating with her boyfriend via text on one occasion. Regarding sentencing manipulation, the Government initiated several controlled buys all with the same individual, Defendant Jose Alonso. Early on (within the first 2 or 3 transactions), the agents identified all

four Defendants and documented several gun sales. The later transactions served only to increase sentencing exposure for all involved. While Ms. Segura does not have a document or recording wherein agents are given a directive or explicitly agree to engaged in multiple transactions for the sole purpose of increasing quantity and sentencing exposure, the agents' continued negotiations and dealings with Defendant Alonso significantly increased sentencing exposure for all alleged conspirators.

### B. <u>The Court May Apply a Downward Variance Under 18 U.S.C. § 3553(a)</u>

An alternative to a downward departure based on Court findings as to defendant predisposition and/or government misconduct, is a downward variance under 18 U.S. § 3553(a). Pursuant to § 3553(a), a sentencing judge may consider a downward variance based on a sentencing entrapment or manipulation defense outside of the evidentiary requirements for downward departure. *See U.S. v. Beltran*, 571 F.3d 1013, 1019-20 (10th Cir. 2009) (Manipulation is an appropriate ground for a variance below the guideline range pursuant to 18 U.S. §3553(a) which requires the Court to consider the nature and circumstances of the offense). There is no doubt that given the guideline's structure, which calls for increased punishment based on quantity, agents may tailor investigations to manipulate sentencing exposure either by initiating sales for greater quantities than a defendant would otherwise facilitate (i.e. offering a steady stream of income inducing the defendant to procure and sell greater quantities) or extending the investigation and delaying arrest for the purpose of increasing quantity, and ultimately the recommended sentence. The Court, in its discretion, can safeguard against sentencing disparities by considering the inflated quantity when evaluating the nature, circumstances, and seriousness of the offense under § 3553(a) and applying a variance when warranted.

Here, multiple repeated sales initiated by the agents, after they had determined the identity and participation of each defendant, served only to increase the quantity of firearms and thus the recommended sentence. But for the agent's

repeated initiation and facilitation of multiple sales, the offense at issue, by guideline standards, would be less severe.  Ms. Segura requests that pursuant to § 3553(a), the Court, in its discretion, adopt a downward variance to account for this discrepancy.

**VI.   THE FACTORS SET FORTH IN 18 U.S.C. § 3553 WARRANT A VARIANCE FROM THE RECOMMENDED GUIDELINE RANGE**

Ms. Segura understands that she must be punished for her misconduct and is prepared to serve a custodial sentence.  In light of her difficult upbringing, including early exposure to gangs and violence, her lack of criminal history, her minor role in this conspiracy, her efforts to better herself during pretrial release, and the support of her family, a sentence of no more than 12 months comports with the factors set forth in Section 3553(a).

**A.   The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

Ms. Segura acknowledges that her offense is serious, and that a substantial punishment is warranted.  Here, the Court should take into consideration Ms. Segura's minor role in the conspiracy, sentencing manipulation which resulted in an inflated quantity of firearms and thus an inflated sentencing range, and Ms. Segura's challenging upbringing, including early exposure to gangs and violence.

Ms. Segura is the only defendant in this matter who did not personally engage in firearm sales or facilitate a sale of firearms. Rather, Ms. Segura accompanied Defendant Jose Alonso on 4 of 9 sales transactions and communicated via text on one occasion concerning an agent's request for firearms. Additionally, in evaluating the nature and circumstances of this offense, Ms. Segura requests that the Court factor in the agent's initiation of multiple transactions well after identifying the players and each of their roles in the conspiracy, which served only to increase the quantity of firearms involved.  Ms. Segura sentence should be commensurate with her culpability as opposed to a quantity established by subsequent, multiple sales.

Finally, this Court should consider Ms. Segura's upbringing, specifically

early exposure to gangs and violence, when determining the appropriate punishment. Her difficult childhood does not excuse her misconduct it this case, but it certainly explains how she finds herself before this Court. Since her arrest, Ms. Segura has made an effort to separate from bad influences and to concentrate on treatment, continued employment, and the safety and care of her children.

### B. The Requested Sentence Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Provides Just Punishment

Ms. Segura understands the harm that illegal gun sales pose to society. She has experienced, through her own exposure to gang violence, how destructive the illegal sales and distribution of firearms is.  It is a substantial crime that damages the community. Here, Ms. Segura requests that the Court consider her minor role in the offense as well as the inflated sentencing range, when evaluating an appropriate punishment. The requested sentence of no more than 12 months is sufficient to address the seriousness of the offenses and promotes respect for the law.

### C. The Requested Sentence Provides and Adequate Deterrence to Criminal Conduct

Ms. Segura is prepared to serve time in federal custody as punishment for her offense. In anticipation of a custodial sentence, she has made arrangements for the care of her two small children while she is away. Although it will be painful to be separated from her children, she has taken appropriate steps to minimize any trauma and harm to them and realizes this is a situation of her own making. She is grateful to her family for their support.

Ms. Segura has minimal criminal history. A custodial sentence will have a tremendous impact on her life.  The requested sentence would deter anyone -- especially those in the situation that Ms. Segura finds herself – from engaging in such conduct.

### D. The Requested Sentence Protects the Public from Further Crimes of the Defendant

While incarcerated, Ms. Segura intends to take advantage of all treatment and

educational programs available to her.  Once released, she is eager to reunite with her children, obtain training and employment from Homeboy Industries, and to complete her education.  The requested sentence is most certainly a deterrent to keep Ms. Segura from engaging in misconduct in the future. Further, the sentence sufficiently protects the public from further crimes.

### E. **During Her Incarceration, Ms. Segura Will Seek the Treatment and Care He Needs to Live a Lawful Life**

During pretrial release, Ms. Segura has maintained fulltime employment, participated in drug and alcohol treatment, contributed financially to her household, and cared for her two small children. Ms. Segura plans to stay on this trajectory. While in BOP custody, she hopes to take part in drug and alcohol treatment programs and to take any educational/training course available. Upon re-entry, Ms. Segura's goal is to obtain employment and complete her education. Most important to Ms. Segura is to provide a safe and peaceful home to her children.

## VII. **HOUSING RECOMMENDATIONS**

Ms. Segura respectfully requests that the Court make the following recommendations to the BOP:

1. Recommendation that the BOP evaluate Ms. Segura for participation in the BOP's RDAP Program;
2. Recommendation that the BOP permit Ms. Segura to participate in the First Step Act Programs that the BOP has available; and
3. That Ms. Segura be housed in a BOP facility near Los Angeles so that she may be close to family.

/ / /

/ / /

/ / /

## VIII. **CONCLUSION**

For the reasons stated herein, Ms. Segura requests the Court enter a sentence of no more than 12 months with the additional conditions set forth above.

Dated:  May 27, 2024

KAEDIAN LLP

*Katherine McBroom*

KATHERINE C. MCBROOM
Attorney for Defendant
BERENICE SEGURA

# EXHIBIT A



**INDUSTRIES**

**BOARD OF DIRECTORS**

Mercedes Martinez, *Chair*
Joe Argilagos
Sean Arian
Keili Bernard
Fr. Gregory Boyle, SJ
Cecilia Cabello
John Cusenza
Troy Dawson
Valarie De La Garza
Fr. Allan Deck, SJ
Renee Delphin-Rodriguez
Hilda Echeverria
Jane Fonda
Zac Guevara
David Herbst
Pernille Spiers Lopez
Christine Lynch
O'Malley Miller
Rick Olivarez
Wayne Ratkovich
Lupita Sanchez Cornejo
David Solomon
Michael Tubbs

**Emeritus**
J. Michael Hennigan
Rob Smith III

August 30, 2023

To Whom It May Concern,

I write to you on behalf of Berenice Segura, who is scheduled to appear before you. I know Berenice through my capacity as Founder and Executive Director of Homeboy Industries. We are a non-profit organization that provides hope, job training and support for previously incarcerated and formerly gang-involved men and women, allowing them to redirect their lives and become contributing members of the community.

Upon Berenice's release I am committed to assist by providing her with mentoring and counseling services, in addition to assisting her with locating employment. Our free post release services will aid Berenice in her transition to life on the outside. Our wrap around services includes tattoo removal, employment services, twelve step meetings (AA/NA/CGA), G.E.D tutoring, case management, mental health counseling, legal services solar panel installation training and more.

Berenice can also receive services such as:
- Obtaining her Social Security card, Driver's License or California ID
- Creating a resume, learning interview techniques, building job skills
- Obtaining her G.E.D. through prep classes and one on one tutoring
- Learning important life skills through interpersonal communication, leadership and courses such as Anger Management, Parenting, Building Healthy Relationships, Alternative to Violence, etc.,

With this stated, it is our hope to welcome Berenice into our paid 18-month training program. I have attached an information sheet about Homeboy Industries and our most recent class schedule for your review.

It is my sincerest hope that you will consider the above as you review Berenice's suitability for release. I greatly appreciate your attention to this letter.

Sincerely,

Fr. Gregory J. Boyle, S.J.
Founder and Executive Director

**Hope has an address.**

130 W. Bruno Street, Los Angeles, CA 90012 | Phone: (323) 526-1254 | homeboyindustries.org

Dear Judge David O. Carter,

I am writing this letter in support of my sister, Berenice, who has recently pleaded guilty to selling illegal firearms. While her actions were undoubtedly wrong, I believe in her capacity for redemption and transformation.

As Berenice's older sister, I have witnessed her journey firsthand. Here are some important points I would like to emphasize. My sister is not just a statistic or a case number,she is my beloved sister. Our bond is bigger than her bad choices, and I love her unconditionally. Despite the gravity of her offense, I remain committed to being her support system. Berenice is a devoted mother to her two children. They are her world, and she has worked tirelessly to provide for them even during her bad choices. As her sister, I can assure you that I will continue to support her upon her release, ensuring that her  children and her have a stable home/environment.

   Berenice has actively participated in self help groups while at her job at home boys industry.She has sought help in coworkers, family,reading, and by doing a self inventory. Her commitment to change is evident, and she is determined to reintegrate into society as a responsible and law-abiding citizen

Upon Berenice's release, I am prepared to assist her with housing and transportation. I have made arrangements to ensure that she and her children have a safe place to stay and reliable transportation to help them rebuild their lives.

We all make mistakes, but it is essential to recognize the potential for growth and transformation. Berenice deserves a second chance, and I believe she will use it wisely. With my continued support and her determination, she can contribute positively to her community.

In conclusion, I urge you to consider the whole person, the sister, the mother, and the individual striving for change. Berenice is more than her past actions. she is a work in progress. I trust that the justice system will weigh her remorse, rehabilitation efforts, and the love of our family as it determines her sentence.

Thank you for your attention, and please feel free to reach out to me if you need further information.

                    Sincerely,

                    Lizeth osuna

Lizetharely14@gmail.com                    8182723383

Honorable Judge David O. Carter,

My name is Cristian Adame , i am Berenice's older brother the reason for this character/support letter is to respectfully request leniency for my sister  who is currently facing charges. I am aware of the seriousness of her situation and the impact her actions have had. However, I believe that her change should be considered.

 Berenice's charges are not to be taken lightly, and I acknowledge the gravity of her actions. She has faced the consequences of her choices and understands the weight of her mistakes.

 Since the crime, I have observed my sister's transformation. She has actively sought rehabilitation by making changes in her life for one disassociating herself from old acquaintance. Further more she has came to me for advice on how to rehabilitate and maintain a healthy crime free lifestyle. I am currently serving a life sentence and have made significant changes through self-help classes that have thought me insight and remorse for my crime. I have been passing on my knowledge to my sister to help her in her path to recovery. In my 14 years in prison I have not being able to be there physically for my sister so I partially blame her bad choices on myself for exposing her to the criminal/ gang lifestyle that i use to live. Since my change after obtaining my associates degree in sociology i have been trying to be the big brother Berenice always deserved. I will continue to help her personal growth and change. I genuinely believe she is on a path toward redemption.

Berenice has a strong support system, including family, friends, and mentors who are invested in her rehabilitation. We are committed to helping her reintegrate into society as a responsible and contributing member.

 Given Berenice's remorse, her efforts to change, and the positive impact she can have on her community, I kindly request that you consider leniency in her sentencing. I know that my sister is a good person, mother and friend. I would hate to see her serving a long sentence & influenced by negative people. I have seen the bad side of prison and it scares me to think that my lil sister can potentially be institutionalized. She is an amazing person with a good heart and I love her alot. I would do the time for both of us if I could. Furthermore, I do not want her children growing up motherless and fatherless. Please find compasion in your heart to give my sister a second chance at life and prove that she can be a role model citizen. A compassionate approach would allow her to continue her rehabilitation and contribute positively to society.

Thank you for your attention to this matter, and I trust that you will weigh all relevant factors in your decision.

Sincerely,


Cristian Adame
Ap9345. A-1-245

Po box 4430
Lancaster ca. 93539

Honorable Judge David O. Carter,

My name is Leah Pinedo, and I am Berenice Segura's case manager from Homeboy Industries. I have worked with Berenice off and on for about four years. The reason for this letter is to provide insight on Berenice Segura's character and hopefully provide some unknown information about Ms. Segura to result in the most lenient sentencing. I do understand the severity of her charges and don't want to undermine the court's decision, however, I do ask for consideration in her sentencing.

Since her crimes, I have personally witnessed Ms. Segura's transformation. To provide an example, of how she is actively participating in her rehabilitation is her participation in Homeboy Industries. She works on herself constantly to improve herself as a mother. I have worked with Berenice Segura for three years now and she amazes me everyday with her positive attitude and willingness to change. Given Berenice's environment, household, and limitation to resources as she grew up it reveals why she has a survival mentality. Growing up Ms. Segura learned how to survive and not live. The unhealthy habits Berenice learned growing up is a challenge that she is learning how to dismantle. Not only has Berenice come to Homeboy Industries for rehabilitation services, but she has built relationships with mentors who guide her on this positive and healthy journey. Berenice has the support and foundation needed to become a contributing member of society and a positive mother to her children.

With your kind consideration, I ask the courts to consider Ms. Segura's sentence. Berenice has made negative and wrong decisions but she has shown improvement to change her previous behaviors. In addition, Berenice realized the impact her choices have on her children and wants to be present for the most crucial years of their life. This letter is to provide another view of Ms. Segura in hopes of a lighter sentence. Thank you for your time and consideration.

Estimada Corte,

Me dirijo a usted con el corazón en la mano como Rosa Adame, madre de Berenice Segura. Mi hija ha sido condenada por un delito de venta ilegal de armas de fuego, y aunque reconozco la seriedad de su error, me comprometo a apoyarla incondicionalmente en su camino hacia la rehabilitación y la reintegración en nuestra comunidad.

Alojamiento y Empleo A su liberación, Berenice tendrá un hogar seguro y estable en mi residencia. Además, le ofreceré un empleo en mi empresa de limpieza, lo que no solo le proporcionará una fuente de ingresos, sino también un entorno estructurado y el apoyo necesario para su desarrollo personal y profesional.

Transporte y Apoyo Familiar Entiendo la importancia de la movilidad para ella y sus hijos, por lo que garantizo el transporte por el tiempo que sea necesario. Además, tengo un vehículo adicional que estará a su disposición para su uso personal.

Sistema de Apoyo Más allá de las necesidades materiales, me comprometo a ser su sistema de apoyo emocional y práctico. Estaré a su lado para guiarla y apoyarla en cada paso del camino.

Salud y Bienestar Familiar Es esencial para mí tener a Berenice de vuelta en casa, no solo por el vínculo maternal que nos une, sino también porque necesito su ayuda para manejar mi condición de diabetes. Su presencia es crucial para mi bienestar y el de nuestra familia.

Con estas medidas, confío plenamente en que Berenice podrá superar los desafíos que enfrenta y contribuir positivamente a la sociedad. Agradezco su tiempo y consideración en este asunto tan importante para nosotros.

Atentamente, Rosa Adame

**English Translation of Rosa Adame's Character Letter:**

Dear Court,

I address you with my heart in my hand as Rosa Adame, mother of Berenice Segura. My daughter has been convicted of a crime of illegal sale of firearms, and although I recognize the seriousness of her mistake, I am committed to supporting her unconditionally on her path to rehabilitation and reintegration into our community.

Housing and Employment. Upon her release, Berenice will have a safe and stable home at my residence. In addition, I will offer her a job in my cleaning company, which will not only provide her with a source of income, but also a structured environment and the support necessary for her personal and professional development.

Transportation and Family Support. I understand the importance of mobility for her and her children, which is why I guarantee transportation for as long as necessary. Additionally, I have an additional vehicle that will be at her disposal for her personal use.

Support System. I am committed to being her emotional and practical support system. I will be by her side to guide and support her every step of the way.

Family Health and Wellbeing. It is essential for me to have Berenice back home, not only because of the maternal bond that unites us, but also because I need her help to manage my diabetes condition. Her presence is crucial to my well-being and that of our family.

With these measures, I am fully confident that Berenice will be able to overcome the challenges she faces and contribute positively to society. I appreciate your time and consideration in this important matter for us.

Sincerely, Rosa Adame